IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DANIELLE B.,

              Plaintiff,

         v.                           Civil Action No.
                                         1:22-CV-0471 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF                JUSTIN M. GOLDSTEIN, ESQ.
KENNETH HILLER, PLLC
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.        FERGUS J. KAISER, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard in connection with those motions on August 2, 2023, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is GRANTED.

---

[1]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)      The Commissioner's determination that the plaintiff was not

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is AFFIRMED.

3)      The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      August 4, 2023
            Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
DANIELLE B.,

                         Plaintiff,

vs.                           1:22-CV-471

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------x

      Transcript of a **Decision** held during a

Telephone Conference on August 2, 2023, the

HONORABLE DAVID E. PEEBLES, United States Magistrate

Judge, Presiding.

                A P P E A R A N C E S

               (By Telephone)

For Plaintiff:       LAW OFFICES OF KENNETH HILLER, PLLC
                    Attorneys at Law
                    6000 North Bailey Avenue - Suite 1A
                    Amherst, New York  14226
                     BY:  JUSTIN M. GOLDSTEIN, ESQ.

For Defendant:       SOCIAL SECURITY ADMINISTRATION
                    Office of Program Litigation, Office 2
                    6401 Security Blvd.
                    Baltimore, Maryland  21235
                     BY:  FERGUS J. KAISER, ESQ.

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1          (The Court and all counsel present by

2          telephone.)

3          THE COURT:  Let me begin by thanking counsel for

4    excellent and very spirited presentations.  I've enjoyed

5    working with you on this matter.

6          The plaintiff has commenced this proceeding

7    pursuant to 42 United States Code Sections 405(g) and

8    1383(c)(3) to challenge an adverse determination by the

9    Acting Commissioner of Social Security, finding that she was

10   not disabled at the relevant times and therefore ineligible

11   for the benefits for which she applied.

12         The background is as follows:  Plaintiff was born

13   in September of 1985.  She is currently 37 years old.  She

14   was 33 years of age at the alleged onset of her disability on

15   October 1, 2018.  The record is somewhat equivocal as to

16   whether she is currently married.  The record is also

17   somewhat equivocal concerning her living arrangements.  She

18   has lived in a motel and a homeless shelter in Rensselaer.

19   She has a disabled son who was 16 years of age at one point,

20   there's reference to a 15-year-old daughter but it's unclear

21   the relationship that she has with the daughter.  Plaintiff

22   stands 5 feet in height and weighs 180 pounds.  She has an

23   11th grade education and while in school attended regular

24   classes.  Plaintiff does not drive but does take public

25   transportation.  She did have a felony driving while

1    intoxicated conviction in or about 2010 which may explain why

2    she does not drive.

3             Plaintiff suffers physically from idiopathic

4    angioedema which I understand is a reaction to a trigger that

5    causes swelling in the tissue below the inner layer of the

6    skin called the dermis or the layer below a mucous membrane.

7    There are different types of angioedema.  She suffers from

8    idiopathic angioedema which is angioedema that has no known

9    cause and can result in swelling to the face, hands, trunk,

10   arms, and legs.  She also suffers from allergies, asthma,

11   obesity, back pain, and headaches.

12            Mentally, plaintiff has had various diagnoses,

13   including depression, anxiety, panic attacks, an affective

14   disorder, and post-traumatic stress disorder/trauma/stress.

15            Plaintiff stopped working on August 1, 2019,

16   although there is indication of potentially subsequent work

17   and clear efforts by the plaintiff to obtain medical

18   clearance to return to work.  While employed, plaintiff

19   worked as a baby-sitter, cashier, personal care assistant,

20   waitress, and housekeeper.

21            Plaintiff receives treatment from Whitney Young

22   Health Services where she began treating in July of 2019

23   primarily with Dr. Robert Weissberg and Family Nurse

24   Practitioner Jennifer McBain.  She also has visited the

25   Samaritan Hospital of Troy and the Albany Medical Center and

1    some other specialists.  She undergoes telephone

2    consultants -- consultations monthly.

3         In terms of activities of daily living, again, the

4    record is a little ambiguous or unclear.  She can dress,

5    bathe, groom, at some point she states she can cook and at

6    other points in the record she denies cooking.  She can

7    clean, do laundry, she does not shop, she has no hobbies,

8    does not watch television or listen to the radio, and she

9    says that she does not socialize with friends.

10        Procedurally, plaintiff applied for Title II and

11   Title XVI benefits on April 24, 2015.  That prior application

12   was denied on November 1, 2017 in an administrative law judge

13   decision.  Most recently, she applied again on June 10, 2019

14   for Title II and Title XVI benefits, alleging an onset date

15   of October 1, 2018 and claiming disability as result of

16   idiopathic angioedema, anxiety, and asthma.  A hearing was

17   conducted to address those applications on November 23, 2020,

18   by Administrative Law Judge, or ALJ, Arthur Patane.  On

19   December 4, 2020, at the ALJ's request, a vocational expert

20   submitted written interrogatory responses to questions posed.

21   A subsequent hearing was conducted on March 13, 2021, and the

22   result was an adverse determination issued on April 2, 2021

23   by Administrative Law Judge Patane.  That became a final

24   determination of the agency on March 8, 2022 when the Social

25   Security Administration Appeals Council denied plaintiff's

1    application for review of that determination.  This action

2    was commenced on May 6, 2022, and is timely.

3              In his decision, ALJ Patane applied the familiar

4    five-step sequential test for determining disability.

5              At step one, while noting that there might be

6    activity and unreported income since October 1, 2018, he

7    nonetheless gave the plaintiff the benefit of the doubt and

8    found that she had not engaged in substantial gainful

9    activity since the alleged onset date.

10             At step two, ALJ Patane concluded that plaintiff

11   does suffer from severe impairments that impose more than

12   minimal limitations on her ability to perform basic work

13   functions, including idiopathic angioedema, asthma, obesity,

14   affective disorder, anxiety disorder, trauma, and

15   stress-related disorder.

16             At step three, he concluded that plaintiff's

17   conditions do not meet or medically equal any of the listed

18   presumptively disabling conditions, specifically focusing on

19   3.03 dealing with asthma, Social Security Ruling 19-2p

20   addressing obesity, 14.00 generally addressing angioedema, as

21   well as 12.04, 12.06, and 12.15 related to plaintiff's mental

22   impairments.

23             ALJ Patane next concluded based on the record that

24   plaintiff is capable of performing light work notwithstanding

25   her impairments as defined in the regulations except she must

1    avoid concentrated levels of respiratory irritants, she can

2    interact frequently with others and is limited to unskilled

3    simple work tasks and will be off task 5 percent of a

4    workday.

5          Applying that residual functional capacity at step

6    four, Administrative Law Judge Patane concluded that

7    plaintiff is not capable of performing her past relevant

8    work, listing the various positions that she held.

9          Proceeding to step five with the benefit of the

10   testimony of a vocational expert and a hypothetical posed to

11   that expert that tracked or mirrored the residual functional

12   capacity finding, ALJ Patane concluded that plaintiff is

13   capable of performing available work in the national economy,

14   citing as representative positions those of silverware

15   wrapper, marking clerk, and survey worker, and thus concluded

16   that plaintiff was not disabled at the relevant times.

17         The plaintiff in this case is obviously a

18   sympathetic character and I empathize with her homelessness

19   and her situation and her physical and mental conditions.

20   Nonetheless, my task is extremely limited and the standard I

21   apply is highly deferential.  I must determine whether

22   substantial evidence supports the resulting determination,

23   that being defined as such relevant evidence as a reasonable

24   person would find sufficient to support a conclusion, and I

25   must also ensure that proper legal principles have been

1    applied.  The standard that I apply is stringent, as the

2    Second Circuit noted in *Brault v. Social Security*

3    *Administration Commissioner*, 683 F.3d 443, from June of 2012,

4    and reiterated many times since, including most recently in

5    *Schillo v. Kijakazi*, 31 F.4th 64 from April 6, 2022.

6            The plaintiff's contentions in this case are

7    basically four.  She focuses on the RFC finding and

8    specifically the time that she would be off task and the

9    number of days she would be absent, as well as the frequent

10   interaction with others limitation in the RFC, alleging that

11   they are not supported by substantial evidence and that there

12   should have been a recognition of absenteeism and a greater

13   recognition of off-task time.

14           Second, and these are intertwined, she challenges

15   the administrative law judge's evaluation of medical

16   opinions, including especially from Dr. Robert Weissberg and

17   Nurse Practitioner Jennifer McBain, that's primarily 17F

18   exhibit.

19           Third, she challenges the administrative law

20   judge's determination regarding her subjective symptomology

21   complaints.

22           And fourth, she argues that there is no support for

23   a light work finding because the state agency consultants

24   opined that she is capable of performing medium work.

25           Turning first to the RFC finding, of course pivotal

1    to any disability determination is the RFC finding which

2    represents a range of tasks a plaintiff is capable of

3    performing notwithstanding her impairments.  And that means a

4    claimant's maximum ability to perform sustained work

5    activities in an ordinary setting on a regular and continuing

6    basis, meaning eight hours a day for five days a week or an

7    equivalent schedule.  A determination concerning RFC must be

8    informed and supported by consideration of all relevant

9    medical and other evidence.

10           The focus, at least primarily, is upon the

11   administrative law judge's weighing of the various medical

12   opinions.  The plaintiff argues that all of them were

13   rejected -- I'm not sure that that's the case.  I read it

14   instead that certainly portions of all or most of the medical

15   opinions in the record were discounted, but many portions

16   were cited as supportive of the RFC finding.  Evaluation of

17   medical opinions is subject to new regulations under which an

18   ALJ no longer defers or gives any specific evidentiary

19   weight, including controlling weight, to any medical opinion

20   or prior administrative medical findings, including those

21   from a claimant's treating sources.  20 C.F.R. Sections

22   404.1520c(a) and 416.920c(a).  In evaluating medical

23   opinions, an ALJ must now apply relevant factors, including

24   particularly considering the questions of supportability and

25   consistency of those medical opinions, and must articulate

1    how persuasive he or she found each opinion and must explain

2    how he or she considered the supportability and consistency

3    of those medical opinions.  There are other factors which an

4    ALJ should consider but need not specifically address in his

5    or her decision.  And of course, the weight to give

6    conflicting medical opinions is a matter entrusted to the

7    administrative law judge in the first instance and should not

8    be overridden by the court necessarily, unless it lacks

9    rational basis and substantial evidence.  *Veino v. Barnhart*,

10   312 F.3d 578 from 2002.

11           In terms of attendance and off task, the

12   plaintiff's position appears to be primarily that flare-ups

13   of her angioedema would cause her to be off task and absent.

14   And I certainly agree that this is a relevant consideration

15   if there is, if there is support for a finding that the

16   flare-ups would interfere with the ability to perform work

17   functions on a regular basis.  *Perez v. Astrue*, 2009 WL

18   2496585 from the Eastern District of New York, August 14,

19   2019.  The plaintiff testified to experiencing swelling 27

20   days per month, but careful review of the medical treatment

21   records does not bear out that claim.  And one prime example

22   is a treatment note from Nurse Practitioner McBain from

23   September 8, 2020 that appears at 591 to 594, it's one that

24   has been heavily relied on by the plaintiff because it does

25   reference missing work.  However, it also notes the

1    following:  She, meaning plaintiff, reports she is feeling

2    okay, asthma and allergies are under control, reports last

3    episode was two, three months ago when she was first in a

4    homeless shelter and she was at medical -- Albany Med for

5    observation overnight and prior to that it had been almost a

6    year since an episode.

7         Later on, it also notes plaintiff is okay to work

8    as symptoms are well controlled, plaintiff is aware to avoid

9    triggers and keeps Albuterol inhaler and Epipen on her at all

10   times.  Patient knows she can work but may need to take a

11   sick day periodically.  The -- those quotes indicate -- oh,

12   and by the way, parenthetically there is a provision

13   concerning irritants in the RFC finding.  The taking a sick

14   day periodically is not quantified in that particular

15   treatment note.  Plaintiff argues that Nurse Practitioner

16   McBain should have been recontacted to inquire as to the

17   quantification of that, but a duty to recontact is only

18   required if the record contains insufficient evidence to

19   determine disability, 20 C.F.R. Section 416.920b(b).  And I

20   also note that I agree with the Commissioner that this

21   probably does not technically qualify as a medical opinion

22   under the new regulations.

23        There is reference to missing documents.  Plaintiff

24   argues that the social services records, food stamps and

25   welfare from state agencies should have been obtained and are

1    missing.  It's unclear specifically what those documents are
2    and how they would be potentially relevant to plaintiff's
3    ability to perform basic work functions.  The Social Security
4    applications are in the record, and in any event, it's
5    plaintiff's burden to come forward with evidence to prove
6    disability.  There's no indication during the hearing that
7    plaintiff's representative argued that these should be
8    obtained and are relevant or that the record was incomplete.
9            The plaintiff quarrels with the administrative law
10   judge's observation that plaintiff may have worked and
11   certainly sought work clearances during the relevant period.
12   That is clearly borne out, July -- let's see, October 25,
13   2018, 654 of the record; April 30, 2019, 699 of the record;
14   June 21, 2019, 718 of the record; July 30, 2019, 721 in the
15   record; September 8, 2020, 591 of the record.  In any event,
16   any error in finding that plaintiff was capable of and trying
17   to work and may have worked is harmless because, at step two,
18   the Commissioner, the ALJ that is, gave plaintiff the benefit
19   of the doubt and found that she had not engaged in
20   substantial gainful activity.
21           Plaintiff argues that these may have been failed
22   work attempts which further her claim that she cannot work.
23   There's no evidence that she has presented as to what those
24   positions were, why she couldn't work in those positions, and
25   why that would translate to a total inability to perform work

1    in any position.

2             One of the focuses of plaintiff's argument is on

3    the medical opinion that appears at 728 through 730 of the

4    record.  It bears the signature of Nurse -- I'm sorry, of,

5    yes, Nurse Practitioner McBain although it contains the --

6    also the information of Dr. Weissberg, it was attributed by

7    the -- it is dated February 2, 2021, was attributed by the

8    administrative law judge to Dr. Weissberg.  The opinion

9    states that plaintiff is seriously limited but not precluded

10   in the ability to complete a normal workday and workweek

11   without interruptions from psychologically-based symptoms,

12   and in being aware of normal hazards and taking appropriate

13   precautions and is unable to meet competitive standards in

14   dealing with normal work stress.  It also opines that

15   plaintiff would be absent about four days per month.

16            The administrative law judge addressed it in the

17   decision on page 23 and found it to be partially persuasive.

18   The reasoning given:  One, the author appears to have relied

19   substantially on uncorroborated subjective reports when

20   opining she would be absent four days per month, would need

21   unscheduled indeterminate breaks, could walk about two blocks

22   and could stand at only 45-minute intervals.  As Commissioner

23   noted, I agree that subjective reports are important,

24   particularly in mental health cases, but the word

25   uncorroborated qualifies that sentence, and secondly, it's

1    only one of four reasons given.

2           Second is plaintiff's longitudinal primary care and

3    immunology clinical findings have been within normal limits;

4    three, the claimant endorsed control of her condition in

5    appointments in the months leading up to the assessment; and

6    four, the only visit in the month prior related to another

7    condition, TMJ, without active angioedema or asthma

8    complaints, while medications had established good control of

9    her disorders, and she repeatedly affirmed her belief that

10   she could work in seeking medical clearances.

11          I also note that the -- I understand that the fact

12   that an opinion is given on a check-box form in and of itself

13   and standing alone is insufficient to reject or discount it;

14   nonetheless, this opinion, other than listing diagnoses, does

15   not explain the reasoning why plaintiff, for example, would

16   be absent four days per month, and that is a factor that is

17   proper, in my view, to take into consideration the lack of an

18   explanation by the treating source or the author of the

19   document.

20          As the administrative law judge points out, the

21   Whitney Young treatment notes don't bear out what these

22   opinions show.  Longitudinal findings have been mostly

23   normal.  There were sporadic ER visits by the plaintiff.  I

24   quantify it at, one time in 2017, five times in 2018, nine

25   times in 2019, and one time in 2020.  In most of those

1    instances she was treated and discharged.  I note that at

2    least three of them appear to have been for the purpose of

3    obtaining a return-to-work note, that is July 30, 2019,

4    October 25, 2018, that was a physical exam for a new job with

5    no other complaints, and April 30, 2019, return-to-work

6    clearance with no complaints.  And others of those were for

7    non-angioedema reasons.  Headaches, February 7, 2020; chest

8    pain, February 26, 2019; chest pains, March 17, 2018.  The

9    medical records, as the ALJ found, just do not substantiate

10   plaintiff's claims.

11        It is true that the administrative law judge did

12   not incant those important words, supportability and

13   consistency; however, I am able to glean the administrative

14   law judge's reasoning on those issues from the record and the

15   mere fact that they are not referenced alone does not provide

16   a basis to find legal error.  *Maria S. v. Kijakazi*, 2022 WL

17   4619861 from the Northern District of New York, September 30,

18   2022.

19        The plaintiff has cited some notes that reflect

20   greater symptomology but it's not a sufficient basis to

21   override the administrative law judge's decision.  My role is

22   to determine whether substantial evidence supports the

23   resulting determination.  It is up to the administrative law

24   judge to weigh the conflicting arguments and I'm being asked

25   only to reweigh the arguments, even if I were to agree, and I

1    don't necessarily agree, that the treatment notes show

2    greater limitations than endorsed by the administrative law

3    judge.

4            So in short, I find the physical components of the

5    residual functional capacity finding to be supported by

6    substantial evidence.

7            And turning to the mental aspects, it is true that

8    consultative examiner, one-time consultative examiner

9    Dr. Patricia Cameron, issued an opinion on January 14, 2020

10   that appears at 508 to 512 of the record.  There are marked

11   limitations noted in the medical source statement including

12   in sustaining concentration and performing a task at a

13   consistent pace, in sustaining an ordinary routine and

14   regular attendance at work, and moderate limitation in

15   regulating emotions, controlling behavior and maintaining

16   well-being.

17           The opinion is discussed by the administrative law

18   judge at two locations, 21 and 22, and again at 24 of the

19   record.  And again, while it doesn't necessarily state how

20   much persuasion it is given, it is not necessarily rejected

21   in toto.  In fact much of the assessment is found to be more

22   persuasive.  The reasons for not adopting the marked

23   limitations include, one, her mental status observations were

24   anomalous in the record; two, the claimant's subjective

25   reports of symptoms and restrictions remained inconsistent

1    with treatment modalities and all other mental status

2    findings; and three, she was able to work during much of the

3    alleged period at issue and repeatedly asserted she could

4    work with good control of the symptoms when seeking medical

5    clearances.

6            I would say that that gives me a, gives me a window

7    into the ALJ's rationale, particularly when I read the

8    decision as a whole and there is a substantial recounting of

9    plaintiff's treatment.  It was noted that on a couple

10   occasions she was referred to specialized psychiatric

11   treatment but did not follow up and she's never really had

12   any specialized psychiatric treatment.  The -- so -- and as I

13   said, it's not, it's not right to say that the opinion was

14   rejected in toto.  Part of it was accepted and part rejected

15   and as the case law clearly establishes, there's no

16   obligation to either accept or reject an opinion, a medical

17   opinion in whole.  Again, plaintiff cites various treatment

18   notes but simply asks the court to reweigh the evidence.

19           I notice that Dr. Ochoa and Dr. Ferrin, two state

20   agency consultants, did not necessarily opine that plaintiff

21   can frequently interact with others as was found in the ALJ's

22   RFC.  Dr. Cameron found only a moderate limitation in

23   interacting with supervisors, coworkers, and the public at

24   511, Dr. Ochoa found moderate limitation in the worksheet

25   with the general public but said that plaintiff is able to

1    interact with coworkers, supervisors, and the public in an

2    appropriate manner at page 98.  Dr. Ferrin opined the same,

3    page 115.  So in my view, the frequent interaction portion of

4    the RFC is supported by substantial evidence.  Again, there's

5    no requirement that it necessarily parallel any one opinion.

6    In the end, it is plaintiff's burden to show greater

7    limitation.

8           The conclusion I reach is that substantial evidence

9    supports the mental component of the RFC, including frequent

10   interaction.

11          Plaintiff also challenges the evaluation of her

12   reported symptomology, what we used to call credibility.

13   Under the two-step review protocol applicable to assessing a

14   claimant's subjective reports, an ALJ first determines

15   whether the individual has a medically determinable

16   impairment that could reasonably be expected to produce the

17   alleged symptoms.  And in this case the ALJ concluded that

18   she did.

19          Secondly, the ALJ must then evaluate the intensity

20   and persistence of those symptoms and determine the extent to

21   which those symptoms limit the claimant's ability to perform

22   work-related activities.

23          The administrative law judge began the analysis by

24   recounting plaintiff's claims on the bottom of page 17 and

25   the top of page 18, and then extensively discussed history of

1    her treatment including emergency room visits, noted that

2    these were sporadic events, that Xanax and blockers were

3    helping her conditions and that plaintiff on multiple

4    occasions reported that her angioedema was under control.  He

5    did cite lack of treatment but it was not the primary basis

6    for the determination.  The primary basis is summarized at

7    page 22 of the opinion and found that the medical evidence

8    was not consistent with plaintiff's testimony.  The reasoning

9    is fivefold.  One, her angioedema episodes were consistently

10   minor and without complication despite incomplete adherence

11   to specialist appointments and medications; two, she did not

12   have specific asthmatic attacks or any documented respiratory

13   clinical or laboratory diagnostic abnormalities; three,

14   despite her obesity, her clinical findings were consistently

15   within normal limits for strength, sensory, reflexes, gait,

16   ranges of motion, gait, and movement even during her isolated

17   angioedema episodes; four, no evidence to substantiate claims

18   of specialized mental health care and panic attacks or poor

19   control of symptoms; and five, her mental status clinical

20   findings have been consistently within normal limits for

21   behavior, manner of relating, mood, affect, speech, and

22   cognition.

23          The credibility determination, and I'll use the

24   word credibility, shorthand for evaluation of subjective

25   complaints, the determination is normally entitled to

1     substantial deference, *Edward J. v. Kijakazi*, 2022 WL

2     4536257, September 28th, 2022.  In this case I find it is

3     supported by substantial evidence and I don't find any error

4     in the credibility determination which is explained very well

5     by the administrative law judge.

6          The last issue is the physical component of the RFC

7     and where the light work finding came in.  Dr. Azad at 513 to

8     515, January 13, 2020, opined that plaintiff has moderate

9     limitations in lifting, carrying, et cetera.  Dr. Gandhi at

10    86 to 100 on February 11, 2020, and later Dr. S. Putcha, 101

11    to 117 from June 23, 2020 opined that plaintiff is capable of

12    performing medium work.  The finding of light work is less

13    than medium work.  If it was error to ratchet down the

14    physical component of the RFC, it was harmless.  It is more

15    favorable to the plaintiff and the failure to explain is

16    harmless error.  *Ryan W. v. Commissioner of Social Security*,

17    2022 WL 813934 from the Northern District of New York,

18    March 17, 2022.

19         So I find that substantial evidence supports the

20    RFC, both the physical and the mental health components, the

21    determination regarding plaintiff's reported symptomology was

22    proper and entitled to deference and I find no basis to

23    disturb it.  I find in total that substantial evidence

24    supports the resulting determination and will grant judgment

25    on the pleadings to the defendant and order dismissal of

1    plaintiff's complaint.

2            Thank you again to both of you and I hope you have

3    a good afternoon.

4            MR. GOLDSTEIN:  Thank you.

5            MR. KAISER:  Thank you, your Honor.

6                (Proceedings Adjourned, 12:09 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

 5     Official Realtime Court Reporter, in and for the

 6     United States District Court for the Northern

 7     District of New York, DO HEREBY CERTIFY that

 8     pursuant to Section 753, Title 28, United States

 9     Code, that the foregoing is a true and correct

10     transcript of the stenographically reported

11     proceedings held in the above-entitled matter and

12     that the transcript page format is in conformance

13     with the regulations of the Judicial Conference of

14     the United States.

15

16                         Dated this 3rd day of August, 2023.

17

18

19                         /S/ JODI L. HIBBARD
                           _____
20                         JODI L. HIBBARD, RPR, CRR, CSR
                           Official U.S. Court Reporter
21

22

23

24

25
```

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547